T.C. Memo. 1998-450


UNITED STATES TAX COURT


ESTATE OF JACQUELINE A. STOTZ, DECEASED, TRENT MCGEE
AND LEO KAPLAN, CO-EXECUTORS AND JACKIE STOTZ TRUST,
TRENT MCGEE AND LEO KAPLAN, CO-TRUSTEES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18732-96.                 Filed December 23, 1998.


<u>Elliott H. Kajan</u> and <u>Cameron Williams</u>, for petitioners.

<u>Louis B. Jack</u>, for respondent.


MEMORANDUM OPINION

GERBER, <u>Judge</u>:  This case had been calendared for trial at
the Los Angeles, California, trial session beginning March 23,
1998.  Shortly before that session, the Court was advised by the
parties' representatives of a settlement, and, as a result, the
Court continued this case from the trial session.  After several

extensions of the time within which the parties were to provide the Court with a decision document reflecting their settlement, petitioners, on October 20, 1998, filed a motion to calendar for trial, alleging that the settlement was disabled because of a mutual mistake or an affirmative misrepresentation concerning respondent's position. The questions we must consider are whether the parties had a binding settlement, and, if they did, whether petitioners remain bound to the terms of the parties' agreement. If either question is decided favorably for petitioners, then petitioners will be relieved from the agreement to settle.

Background

On several occasions, the parties reported to the Court that a basis for settlement had been reached in this case. No document setting forth the particulars of the settlement was provided to the Court. The settlement agreement, as described by respondent, was that respondent would concede the increased deficiency claimed in the amendment to answer and petitioners would concede the deficiency determined in the notice of deficiency. The parties' concessions concern corporate stock that was part of the gross estate. The issue of which petitioners complain involves the amount of discount to the value of corporate stock that would be attributable to possible capital gains tax on the sale or liquidation of the corporation's assets.

In motions and pleadings, it was explained that the estate's appraiser valued the corporation's assets at $18,552,231, and using a 10-percent discount for marketability and a discount for potential capital gains, arrived at a $14,910,000 reporting value. Agreeing with the $18,552,231 value and the 10-percent marketability discount, but not with the discount for potential capital gains, respondent's notice determination resulted in a $16,428,719 value. In an amended pleading, respondent sought an increased deficiency on the grounds that the estate was not entitled to the 10-percent marketability discount for all assets of the corporation. In particular, respondent sought an increased deficiency to the extent that a 10-percent marketability discount had been claimed regarding the corporation's cash assets and allowed in the notice of deficiency.

Petitioners contend that respondent's examining agent had proposed to allow a discount on the "built-in capital gains" on corporate assets actually sold after the decedent's death. As noted above, no such discount was allowed in respondent's notice of deficiency. Respondent's counsel, in accord with the notice of deficiency, maintained the litigating position that no discount regarding capital gains tax was allowable in this case. Petitioners contend that respondent's counsel represented respondent's general litigating position as one that precluded,

under any circumstances, the possibility of any form of built-in capital gains tax discount. After the parties had agreed to settlement, petitioners discovered that respondent had, in another case, Estate of Davis v. Commissioner, 110 T.C. 530 (1998), taken the following reply brief position:

> Respondent agrees that if a sale or liquidation of [the taxpayer's] assets was in fact contemplated on the valuation date or if, in fact, avoidance of a corporate level capital gains tax was not available, some reduction in value would be appropriate.

Respondent contends that his trial memorandum comports with the position stated in the above-cited case and that respondent's counsel did not agree that the circumstances for such a discount or reduction exist here. Respondent references the following from his trial memorandum in this case:

> Because a purchaser of the decedent's stock could have avoided or indefinitely deferred payment of capital gains tax, and because no liquidation or sale of assets was planned for this particular corporation as of the date of death, a discount for potential capital gains tax is too speculative for estate tax valuation purposes.

## Discussion

In this setting, petitioners argue that there was either a mutual mistake or an affirmative misrepresentation regarding respondent's position on the major issue in this case. Respondent counters that there was a settlement agreement, which was not founded on a mutual mistake, and that respondent's counsel did not misrepresent respondent's position.

We have held that the existence or validity of parties' settlements may be interpreted under general contract principles. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969), supplemented by 53 T.C. 275 (1969). In that regard, as expressed in Bankamerica Corp. v. Commissioner, 109 T.C. 1, 11 (1997):

> It is clear that we may reopen an otherwise valid settlement agreement based on the existence of mutual mistake. Callen v. Pennsylvania R. Co., 332 U.S. 625, 630 (1948); Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 334 (1997). We may also relieve a party of a stipulation where justice requires. Cf. Rule 91(e); Adams v. Commissioner, 85 T.C. 359, 375 (1985); Shaw v. Commissioner, T.C. Memo. 1991-372 n.3. On the other hand, unilateral mistake is generally not a ground for reforming a settlement or stipulation. Stamm Intl. Corp. v. Commissioner, 90 T.C. 315, 320 (1988); see Markin v. Commissioner, T.C. Memo. 1989-665. * * *

Petitioners do not contend that a basis for settlement was not reached or that a settlement was not agreed to. Accordingly, the parties entered into a contract to settle, but petitioners contend that there was a mutual mistake as to respondent's position in this case. Respondent counters that his position was set forth in his trial memorandum, and that position was in accord with respondent's litigation position expressed in his reply brief in Estate of Davis v. Commissioner, supra. We agree with respondent.

Although petitioners allege that respondent's counsel orally precluded the possibility that capital gains tax could be taken into account in this case, the written documents in this case do

not bear out petitioners' allegation. Based on the notice of deficiency and respondent's trial memorandum, it is clear that respondent's trial position was essentially the same as the one expressed in Estate of Davis v. Commissioner, supra. Even though respondent's litigation position in Estate of Davis did not come to petitioners' attention until after a basis for settlement had been reached, petitioners were aware of respondent's trial memorandum at the time of settlement. Accordingly, to the extent that there was a mistake of fact or misunderstanding about respondent's trial position in this case, it would have been petitioners' unilateral mistake or misunderstanding. It is also noted that there was no mistake about the terms of the settlement between the parties or the underlying facts. The alleged mistake is about the Government's litigating position.

Petitioners, relying on Stamm Intl. Corp. v. Commissioner, 90 T.C. 315, 320-321 (1988), contend that respondent's counsel made an affirmative misrepresentation as to respondent's litigating position. Petitioners contend that they relied on the misrepresentation and that grounds exist for relief from the settlement stipulation. See also Saigh v. Commissioner, 26 T.C. 171, 180 (1956), where the Court recognized that "Excusable damaging reliance upon a false or untrue representation of the other party, even one innocently made, is a recognized ground for relief from a settlement stipulation."

Even if respondent's counsel had orally stated the Government's litigating position as one where no discount of any kind for "built-in capital gains" is permitted, with respondent's trial memorandum containing a contrary statement, it is hard to understand how petitioners were misled or why the oral statement was accepted over the written position. The very essence of the parties' controversy is sourced in their interpretations of law, litigating positions, facts, cases, etc. If petitioners accepted an oral representation of respondent's best offer or litigating position, we must assume that the offer was accepted after considering petitioners' chances for success in litigation.

We also recognize that this case had been calendared for trial and that the Court had invested time in resolving certain of the parties' pretrial procedural disagreements. The parties were released from their obligations to complete trial preparation and\or to present their evidence only after they advised the Court that the case had been settled. We shall treat the settlement as binding in these circumstances. <u>Dorchester Indus. Inc. v. Commissioner</u>, 108 T.C. 320 (1997).

To reflect the foregoing,

<u>An appropriate order will be</u>
<u>issued denying petitioners' motion</u>
<u>to calendar.</u>